# United States Tax Court

T.C. Memo. 2024-67

FABRICIO MORAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 1239-23.                    Filed June 17, 2024.

————

Fabricio Moran, pro se.

*Ka (Matt) Tam*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: Petitioner did not file a Federal income tax return for 2018. On the basis of third-party reporting, the Internal Revenue Service (IRS or respondent) determined a deficiency of $60,811 and additions to tax under sections 6651(a)(1) and (2) and 6654.[1] Respondent has filed a Motion for Summary Judgment urging that there exist no genuine disputes of material fact and that he is entitled to judgment as a matter of law. We agree and accordingly will grant the Motion.

### Background

Petitioner failed to file a return for 2018. On the basis of reports from third-party payors, the IRS determined that he had received during 2018 gross income of $254,512, comprising wages of $213,630,

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] capital gain of $32,227, taxable payments of $6,236 from a medical savings account, a taxable distribution of $2,417 from a retirement account, and taxable dividends of $2. Allowing a standard deduction of $12,000, the IRS determined taxable income of $242,512, generating tax of $60,569 under the rate applicable to "married, filing separately." To that the IRS added an additional tax of $242 for an early distribution from a qualified plan, *see* § 72(t), producing a total tax liability of $60,811. Against this tax the IRS applied prepayment withholding credits of $42,961, generating a net underpayment of $17,850.

On September 12, 2022, the IRS prepared a substitute for return (SFR) setting forth the adjustments discussed above. Respondent has included with his Motion a properly executed Certification establishing that the SFR satisfied the requirements of section 6020(b). On November 14, 2022, the IRS sent petitioner by certified mail a notice of deficiency based on the SFR. The notice determined a deficiency of $60,811, an addition to tax of $4,016 under section 6651(a)(1) for failure to timely file, an addition to tax of $3,659 under section 6651(a)(2) for failure to timely pay, and an addition to tax of $424 under section 6654 for failure to pay estimated tax.

Petitioner resided in Maryland when he timely petitioned this Court on February 13, 2023. He stated in his Petition that he disagreed with the notice of deficiency in only two respects. First, whereas "the Explanation of the Delinquency [sic] states that a tax return was filed in Sept 2022," petitioner represented that he "never file[d] a return for 2018." Second, whereas "the Report of Income Tax Examination Changes shows a filing status of Married Separate," petitioner represented that he was "not married [but] was divorced." In the section of the Petition asking him to state the facts on which he relied to support his position, he listed one fact: "I have a Divorce Decree dated Dec. 30, 2012."

In the Petition, petitioner requested that his case be processed under the Court's "small tax case" procedure. *See* Rules 170 and 171. That procedure is available only if "the amount of the deficiency placed in dispute" does not exceed $50,000 for any one year. *See* § 7463(a)(1). Because the deficiency placed in dispute for 2018 was $60,811, we ordered petitioner to show cause why the "small tax case" designation should not be removed. When he failed to respond, we issued an Order on May 18, 2023, removing the "small tax case" designation and directing that the case be processed as a regular tax case.

[*3]   The case was set for trial in Washington, D.C., on April 15, 2024. In notifying petitioner of the trial date, we informed him that "[t]here are tax clinics in your area that may represent you free of charge if you meet certain qualifications." The notice listed five tax clinics in the Washington, D.C., area and urged petitioner to contact one of them "as soon as possible to inquire about possible representation in your case." We noted that "the tax clinic can advise and assist you in resolving your case by settlement or trial." In a subsequent reminder we advised: "Petitioners who have not already done so are encouraged to contact a tax clinic as soon as possible."

On February 14, 2024, respondent filed a Motion for Summary Judgment urging that all adjustments set forth in the notice of deficiency should be sustained. Counsel for respondent represented that he had attempted to communicate with petitioner by letter in December 2023 and by telephone on January 22 and February 14, 2024. But he indicated that all such efforts had been unsuccessful.

On February 15, 2024, we ordered petitioner to respond to the Motion by March 15, 2024. We attached to our Order a set of Q&As captioned "What is a Motion for Summary Judgment? How should I respond to one?" We informed petitioner that, if he "disagree[d] with the facts set out in the Motion, [he] should point out the specific facts in dispute and explain why these factual disputes are important." We advised that, "under Tax Court Rule 121, judgment may be entered against a party who fails to respond to a Motion for Summary Judgment."

Petitioner did not respond to the Motion for Summary Judgment by the March 14 deadline we set. By Order served March 18, 2024, we continued the case from the April 15, 2024, Washington, D.C., trial session and retained jurisdiction to consider respondent's Motion. We have received no further communication from petitioner since that date.

*Discussion*

I.   *Gross Income*

The Internal Revenue Code provides that "gross income means all income from whatever source derived." § 61(a)(1). In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer with the income-producing activity, *see Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir. 1981), *aff'g in part, rev'g in part* 74 T.C. 260 (1980), or demonstrate that the taxpayer actually received income, *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71

**[\*4]** (9th Cir. 1982).  Information supplied to the IRS by the taxpayer's employer on Form W–2, Wage and Tax Statement, or by other payors on Forms 1099, is sufficient to meet this burden.  *See Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97; *Caldwell v. Commissioner*, T.C. Memo. 2022-51, 123 T.C.M. (CCH) 1267, 1269.  "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)); *see Texasgulf, Inc., & Subs. v. Commissioner*, 172 F.3d 209, 214 (2d Cir. 1999), *aff'g* 107 T.C. 51 (1996).

The IRS may not rely solely on a third-party report of income, such as a Form 1099, if the taxpayer raises a reasonable dispute concerning the accuracy of the report.  *See* § 6201(d).  Petitioner has not raised such a dispute.  Indeed, the Petition did not assign error to any of the adjustments to income set forth in the notice of deficiency.  He is thus deemed to have conceded the correctness of those adjustments.  *See* Rule 34(b)(1)(G); *Funk v. Commissioner*, 123 T.C. 213, 218 (2004); *Barrios*, T.C. Memo. 2023-32, at \*7.

Petitioner filed no response to the Motion for Summary Judgment.  He thus ignored our request that, if he "disagree[d] with the facts set out in the Motion, [he] should point out the specific facts in dispute." We accordingly sustain the Commissioner's determination that petitioner in 2018 received gross income of $254,512.

II.  *Additional Tax*

Section 72(t) imposes a 10% "additional tax" on early distributions from qualified retirement plans.  An early distribution is defined as one made before "the date on which the employee attains age 59 1/2." *See* § 72(t)(2)(A)(i).  Petitioner has advanced no contention that he was age 59 1/2 or older when the $2,417 was distributed to him.  Nor does he contend that any other exception set forth in section 72(t)(2) applies.  We accordingly sustain the IRS's determination of a $242 additional tax for 2018.

III.  *Additions to Tax*

The IRS determined additions to tax under sections 6651(a)(1) and (2) and 6654.  Petitioner did not assign error, in his Petition or in any other filing with the Court, to the additions to tax for failure to

**[\*5]** timely file or for failure to pay estimated tax. Those issues are thus deemed conceded. *See* Rule 34(b)(1)(G); *Funk*, 123 T.C. at 218; *Swain v. Commissioner*, 118 T.C. 358, 363–65 (2002); *Barrios*, T.C. Memo. 2023-32, at \*7. However, the Petition appears to assign error—at least indirectly—to the addition to tax for failure to timely pay.

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to pay timely "the amount shown as tax on [a] return" unless the taxpayer proves that his failure was due to reasonable cause and not due to willful neglect. To meet his burden of production under section 7491(c) for this addition to tax, the Commissioner must produce evidence of a tax return. *Wheeler v. Commissioner*, 127 T.C. 200, 208–11 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008); *Gardner v. Commissioner*, T.C. Memo. 2013-67, 105 T.C.M. (CCH) 1433, 1439, *aff'd*, 845 F.3d 971 (9th Cir. 2017). An SFR prepared by the IRS pursuant to section 6020(b) is treated as the "return" filed by the taxpayer for this purpose. *See* § 6651(g).

On September 12, 2022, the IRS prepared an SFR setting forth the adjustments discussed above. Respondent has included with his Motion a properly executed Certification establishing that the SFR satisfied the requirements of section 6020(b). Although petitioner correctly alleged in the Petition that he "never file[d] a return for 2018," the absence of a self-filed return is irrelevant in this case. That is because the "return made by the Secretary under section 6020(b) . . . shall be treated as the return filed by the taxpayer for purposes of determining the amount of the addition [to tax]" under section 6651(a)(2). *See* § 6651(g)(2).

The IRS determined a failure-to-timely-pay addition to tax of $3,659, calculated with reference to petitioner's net underpayment of $17,850. *See* § 6651(a)(2), (b)(2). Petitioner has alleged no facts and produced no evidence showing that his failure was "due to reasonable cause and not due to willful neglect." *See* § 6651(a)(2). We accordingly sustain this addition to tax.

IV.    *Computation of Underpayment*

In the Form 4549, Report of Income Tax Changes, included with the notice of deficiency, the IRS calculated a tentative tax of $60,569 using "Married Separate" as the applicable tax rate. The only substantive argument petitioner advanced in the Petition was that this calculation was incorrect because he was not married during 2018. Respondent

**[\*6]** does not dispute petitioner's representation that he has "a Divorce Decree dated Dec. 30, 2012," and we accept it as true.

As respondent shows in his Motion, the use of the "married filing separately" tax rate was harmless error. For persons in petitioner's income bracket for tax year 2018, the same tax rate applied to single taxpayers and to married taxpayers filing separately. *See* Rev. Proc. 2018-18, § 3.01, 2018-10 I.R.B. 392, 394–95. Respondent included with his Motion a pro forma Form 5278, Statement of Income Tax Changes, computing petitioner's 2018 tax liability using the "single" tax rate. That calculation produces the same tax liability as that determined in the notice of deficiency.

To reflect the foregoing,

*An appropriate order and decision will be entered for respondent.*